**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Criminal Case No. 04-cr-00341-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

BRIAN VON BEHREN,

      Defendant.

---

**ORDER CONCERNING PETITION FOR MODIFICATION OF TERMS OF**
**SUPERVISED RELEASE, OBJECTIONS TO TERMS OF SUPERVISED RELEASE,**
**AND MOTION TO MODIFY CONDITIONS OF SUPERVISED RELEASE**

---

      This matter is before the court on the following: (1) the **Petition for Issuance of Summons on Supervised Release** (Petition) [#54][1] filed March 14, 2014; and (2) **Defendant's Combined Objection To Incorporation of RSA, Inc. Contract into Terms of Supervised Release and Motion To Modify Conditions of Supervised Release** [#67] filed April 11, 2014.  The government filed a response [#70].  I conducted hearings on the petition and combined objections and motion on March 21 and May 28, 2014.

## A.  FACTS

      On January 11, 2005, Mr. Von Behren pled guilty to one count of receipt and distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(B). On March

---

[1]    "[#54]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

31, 2005, this court sentenced Mr. Von Behren to a term of incarceration of 121 months, followed by a term of supervised release of three years. In addition to mandatory and standard conditions of supervised release, the court imposed the following explicit, i.e., special, conditions which are relevant to the instant motion:

> 1. The defendant shall participate in an approved program of sex offender evaluation and treatment, which may include polygraph, plethysmograph and Abel examinations, as directed by the probation officer. The defendant will be required to pay the cost of these evaluations and treatment. The defendant shall comply with the rules and restrictions specified by the treatment agency. The Court authorizes the probation officer to release psychological reports and/or the presentence report to the treatment agency for continuity of treatment.
>
> 2. The defendant shall notify the probation officer of all computers and/or other Internet access devices to which the defendant has access. The defendant shall allow the probation officer to make unannounced examinations of the data stored on the defendant's personal computer(s) and other Internet devices, and collected by such system(s) at any reasonable time and copy data which the probation officer believes may be evidence of a law violation or a technical violation of a condition of supervised release.

*Petition* [#54], pp. 2 - 3.

On February 26, 2014, while Mr. Von Behren was in the custody of the Bureau of Prisons, United States Probation Officer Walter E. Vanni sent a Waiver of Hearing to Modify Conditions of Supervised release to the defendant's case manager.  Via the waiver, the probation department sought the agreement of Mr. Von Behren to additional special conditions not originally imposed by this court. On Mr. Von Behren's request for a hearing, Mr. Vanni filed the instant Petition, requesting this court hold a hearing to impose the modified conditions requested. The Petition sought the inclusion of three, additional, special conditions:

> 1. The defendant shall reside in a residential reentry center (RRC) for a period of up to 180 days, at the discretion of the probation officer, to commence upon release from confinement, and shall observe the rules of

that facility;

2. The defendant shall participate in and successfully complete an approved program of sex offender evaluation and treatment, which may include polygraph, plethysmograph, and Abel examinations, as directed by the probation officer. The defendant will be required to pay the cost of these evaluations and treatment. The defendant shall comply with the rules and restrictions specified by the treatment agency. The Court authorizes the probation officer to release psychological reports and/or the presentence report to the treatment agency for continuity of treatment; the defendant's use of computers and Internet access devices shall be limited to those the defendant requests to use, and which the probation officer authorizes.

3. The defendant shall submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions; and, the defendant shall allow the probation officer to install software/hardware designed to monitor computer activities on any computer the defendant is authorized by the probation officer to use.  The software may record any and all activity on the computer, including the capture of keystrokes, application information, Internet use history, email correspondence, and chat conversations. A notice will be placed on the computer at the time of installation to warn others of the existence of the monitoring software on the computer. The defendant shall not attempt to remove, tamper with, reverse engineer, or in any way circumvent the software/hardware.

On March 21, 2014, the court granted the Petition in part and imposed the first of these proposed modifications – that Mr. Von Behren reside in an RRC for up to 180 days.  The defendant objects to portions of the second and third proposed modifications.  The probation department seeks to utilize RSA, Inc. (RSA) as the sex offender treatment agency. Mr. Von Behren anticipates that he will be required to enter into a treatment agreement with RSA. The terms of the contract are not subject to negotiation by the person in treatment.

Included with the response of the government is a copy of the agreement with

RSA signed by Mr. Von Behren on April 17, 2014. *Exhibit* [#70-1] (RSA Documents). The RSA Documents include: (1) Authorization for Release of Polygraph Information [#70-1] p. 5; (2) Acknowledgment of Non-Confidentiality and Waiver of Confidentiality, Privilege, and Right of Privacy [#70-1] pp. 7 - 8; (3) No Contact With Minors Condition [#70-1] pp. 23 - 26; (4) Adult Offender Treatment Contract [#70-1] pp. 27 - 39. Mr. Von Behren objects to certain terms of the agreement.

In the state of Colorado, sex offender treatment is regulated by the Sex Offender Management Board (SOMB) of the Division of Criminal Justice, under the aegis of the Colorado Department of Public Safety. The SOMB was established in 1992 through legislation enacted by the Colorado General Assembly. The SOMB was charged to promulgate and implement statewide standards and guidelines for the evaluation, treatment, and behavioral monitoring of sex offenders. The Standards and Guidelines issued by the SOMB represent the best practices known today for managing and treating sex offenders. Federal offenders who are court-ordered to participate in sex offender treatment and who are being supervised in the District of Colorado are referred by the probation office to agencies approved by the SOMB. RSA is such a SOMB approved agency. SOMB standards require treatment agencies to administer plethysmograph and polygraph examinations as part of the sex offender evaluation and any concomitant treatment program. From a practical standpoint, offenders cannot be accepted into the sex offender treatment program if they will not participate in the SOMB mandated aspects of evaluation and/or treatment. According to the government, plethysmograph and polygraph examinations are a crucial resource used by sex offender treatment agencies to provide defendants with the most effective treatment.

### B.  STANDARDS OF REVIEW

The imposition of conditions of supervised release is governed by 18 U.S.C. §

3583(d) (*Cf.* USSG §5D1.3, **Conditions of Supervised Release**). That statutory

section provides that the court may order a special condition of supervised release,

provided such condition: (1) is reasonably related to the factors set forth in section

3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D); (2) involves no greater deprivation of

liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B)

(deterrence), (a)(2)(C) (protection of the public), and (a)(2)(D) (correctional treatment);

and (3) is consistent with any pertinent policy statements issued by the Sentencing

Commission pursuant to 28 U.S.C. § 994(a). 18 U.S.C. § 3583(d); USSG 5D1.3(b).

Interpreting this section, the United States Court of Appeals for the Tenth Circuit

has required "conditions of supervised release to be linked to the offense and be no

broader than necessary to rehabilitate the defendant and protect the public." ***U.S. v.***

***Smith***, 606 F.3d 1270, 1282 (10th Cir. 2010).  The Tenth Circuit has recognized that a

district court may modify the conditions of supervised release even when the

modification is based solely on the evidence that was available at the time of sentencing

and there have been no changed circumstances (much less a supervised release

violation). ***See U.S. v. Begay***, 631 F.3d 1168, 1171-72 (10th Cir. 2011).

Generally, a sentencing "court is required to give reasons on the record for the

imposition of special conditions of supervised release. ***See United States v.***

***Kravchuk***, 335 F.3d 1147, 1159 (10th Cir. 2003). Generally, the court need only

provide a 'generalized statement of its reasoning.' ***United States v. Edgin***, 92 F.3d

1044, 1049 (10th Cir.1996)." ***United States v. Hahn***, 551 F.3d 977, 982-83 (10th Cir.

2008).  However, "section 3583(d)(2) requires conditions restricting a defendant's liberty

to be especially fine-tuned to achieve the goals set forth in section 3553(a)(2)(B), (C) and (D)." *Edgin*, 92 F.3d at 1049.  In *Edgin*, the court found that the reasons for a special condition restricting contact between the defendant and his son must be stated explicitly and that the condition must be fine-tuned because the condition restricted a fundamental liberty of the defendant.  *Id*.

Mr. Von Behren contends that some of the conditions of supervised release imposed on him violate his rights under the Constitution of the United States.  Even though a condition of supervised release may pass muster under § 3583(d) and the applicable case law, any condition which violates the constitutional rights of Mr. Von Behren must be altered to remedy the violation or removed as a condition of supervised release.

## C.  ANALYSIS

Mr. Von Behren objects to eleven aspects of the conditions of his supervised release, including certain features of the proposed modifications of the terms of his supervised release and certain features of the requirements of the RSA program.  The objections of Mr. Von Behren address the following topics:  1.  Polygraph Testing; 2. Requirement to Plead Guilty; 3. Arousal Assessments; 4.  Dating Restrictions / Significant Others Group; 5.  Day-to-day activities; 6.  Ban on Sexually Stimulating Material; 7.  Internet Restrictions; 8.  Ban on Alcohol & Illegal Drugs;  9.  No Contact Condition; 10.  Search & Monitoring; 11.  Improper Delegation.

Many of the conditions and requirements at issue are imposed under the terms of the RSA Documents.  Generally, compliance with the terms of the RSA documents is required for participation in and successful completion of the RSA program of sex offender treatment. In turn, participation in and completion of sex offender treatment is a

condition of supervised release.  As a result, I view the requirements of the RSA

program as being, in effect, conditions of supervised release.  Each condition to which

Mr. Von Behren objects is discussed below.

### 1. Polygraph Testing & Required Disclosures

The RSA Contract requires two types of polygraph examinations.  First, an RSA

participant is required to complete "an initial sexual history disclosure polygraph

examination."  RSA Documents [#70-1], CM/ECF p. 29, ¶ 8.  Second, an RSA

participant must complete additional polygraph examinations described as "follow-up

polygraph examinations."  *Id.*, CM/ECF pp. 3-4, -¶ 8.  The follow-up examinations "will

be to monitor [Mr. Von Behren's] compliance with the terms and conditions of [his]

treatment contracts and [his] community supervision requirements."

The Adult Offender Treatment Contract includes provisions tilted General

Program Conditions.  General Program Condition # 8 requires Mr. Von Behren, to

complete a "non-deceptive sexual history polygraph process" prior to advancing through

the RSA program.  RSA Documents [#70-1], CM/ECF p. 29, ¶ 8.  If Mr. Von Behren fails

to make adequate disclosures, he may be required to "participate in a higher frequency

of sexual history disclosure polygraphs, increased monitoring and containment, and/or

staffing with the case management team."  *Id.*, CM/ECF p. 30, ¶ 10.  General Program

Condition #12 states: "I understand that a pattern of deceptive polygraph examination

results (suggesting a lack of honesty with my therapists), whether they are sexual

history disclosure polygraphs or monitoring/maintenance polygraphs, may be a factor

considered in any decision made regarding whether I am unsuccessfully discharged

from, or progressing in my treatment program."  *Id.*, CM/ECF p. 30, ¶ 12.

The contract provides further that Mr. Von Behren agrees "to be completely

honest during all treatment sessions and assume full responsibility for my offenses and my behavior." *Id.*, CM/ECF p. 36, "Honesty" ¶ 1. Finally, the contract provides that "any violation of the conditions of this contract may be grounds for modification, suspension, and/or discharge from the RSA program at the discretion of the staff." *Id.*, CM/ECF p. 38, ¶ 1.  In its response [#70], the government notes that the polygraph testing "is a treatment requirement and modification of this requirement will necessitate the Defendant's termination from any SOMB approved provider of sex offender treatment." *Response* [#71], p. 8.

The RSA Documents include the following provision concerning reports of any crime committed by Mr. Von Behren about which RSA becomes aware:

> I hereby instruct RSA, Inc. to report to any appropriate authority or authorities any occurrence or potential occurrence of any sexual offense on my part regardless of how RSA, Inc. gains knowledge of such occurrence or potential occurrence. "Appropriate authority or authorities" as used in this and subsequent revisions may include, but is not limited to, County Human Services Departments, law enforcement agencies, probation or parole personnel, victims or potential victims, parents, spouses, school personnel, and employers.

Acknowledgment of Non-Confidentiality and Waiver of Confidentiality, Privilege, and Right of Privacy [#70-1] p. 7, ¶ 4.

### a.  Fifth Amendment

Mr. Von Behren argues that the sexual history polygraph testing requirement permits RSA to put questions to Mr. Von Behren and to require answers even though some answers to some questions may incriminate him in a subsequent or pending criminal prosecution.  He contends this constitutes a violation of his Fifth Amendment privilege against self incrimination.  To establish his Fifth Amendment claim, Mr. Von Behren must prove two things: (i) that the statements sought by the government carry

the risk of incrimination; and (ii) that the threatened penalty constitutes compulsion. *Doe v. Heil*, 781 F. Supp. 2d 1134, 1138 (D. Colo. 2011) aff'd, 533 F. App'x 831 (10th Cir. 2013) (citing *U.S. v. Antelope*, 395 F.3d 1128, 1135 (9th Cir. 2005)).

*U.S. v. Antelope*, 395 F.3d 1128, 1135 (9th Cir. 2005) is a factually similar case which provides a useful guide to relevant authority and analysis.  In *Antelope*, the defendant was convicted of possession of child pornography.  Initially, he was sentenced to five years probation.  One of his conditions of probation required him to participate in the Sexual Abuse Behavior Evaluation and Recovery (SABER) program. Antelope's probation was revoked based on his failure to comply with certain conditions, including the requirement that he submit to polygraph examinations as part of the SABER program.  After a long history of appeals and repeated revocations, the United States Court of Appeals for the Ninth Circuit addressed the Fifth Amendment issue. Antelope had been told that any past criminal offenses revealed in the course of the program could be released to the authorities.  *Antelope*, 395 F.3d at 1131.  Antelope's request for immunity from prosecution for any such statements was denied.  *Id.*  The *Antelope* analysis is discussed further below.

(i) Incrimination - The right against self incrimination is applicable only when the threatened incrimination is real and appreciable rather than remote, unlikely, or speculative.  *Minnesota v. Murphy*, 465 U.S. 420, 465 n.7 (1984).  While a person claiming the privilege need not incriminate himself to claim the privilege, if the circumstances appear to be innocuous, the person claiming the privilege must make some positive disclosure indicating where the danger lies.  *McCoy v. C.I.R.*, 696 F.2d 1234, 1236 (9th Cir. 1983).

In the present case and in *Antelope*, the government argued that the Fifth

Amendment issue is not ripe because "no situation implicating the defendant's Fifth Amendment rights has arisen at this juncture." *Response* [#70], p. 8.  In ***Antelope***, the court found the issue to be ripe.  Antelope's probation and, later, supervised release were conditioned "on the submission of a sexual autobiography that we may <u>assume</u> would have revealed prosecutable offenses." *Id*. at 1133 (emphasis added).  "Based on the nature of [the requirement to reveal full sexual history] and Antelope's steadfast refusal to comply, it seems only fair to infer that his sexual autobiography would, in fact, reveal past sex crimes." *Id*. at 1135.

Without knowing the precise questions that might be put to Mr. Von Behren about his sexual history and the possible range of answers, it is difficult to determine precisely whether or not the answers to those questions pose a real and appreciable risk of self-incrimination.  However, if complete revelation of sexual history includes all past, sexual, criminal offenses, if there actually are past sexual criminal offenses and if the statute of limitations has not run on such offenses, then answers to questions about past sexual history do pose a real and appreciable risk of incrimination.  Facing questions which ask about sex with minors, forced sex, or other similar categories, anything but a "no" answer poses a real risk of incrimination.  In contrast, a question which asks for a description of every sexual encounter over the past 10 years may or may not present a risk of incrimination.  The difference lies in the underlying facts of Mr. Von Behren's history, facts he does not want to reveal, at least to some extent, for fear of incriminating himself.

In the end, I conclude that the requirement that Mr. Von Behren reveal a complete sexual history presents a real risk of self-incrimination.  Revelation of a complete sexual history could include criminal offenses.  I may and do infer that the

refusal of Mr. Von Behren to comply with this requirement is some indication that he believes that he faces a risk of incrimination.

In *Searcy v. Simmons*, 299 F.3d 1220 (10th Cir. 2002), the Tenth Circuit considered a sex offender treatment program for incarcerated inmates which program included a similar requirement that the inmate reveal his complete sexual history – crimes and all.  The court concluded that the complete sexual history requirement presented a real risk of incrimination.  *Id.* at 1225 n. 2 (concluding that the *McKune* Court "determined that the sexual history and admission of responsibility implicated the self-incrimination privilege.")  In *McKune*, which concerned a prison sex offender treatment program, the Supreme Court concentrated on the nature of the claimed compulsion and, thus, seems to have concluded that the sexual history requirement did present a real risk of incrimination.  *McKune v. Lile*, 536 U.S. 24 (2002).

It is important to note, however, that there is little or no basis to conclude that all aspects of Mr. Von Behren's sexual history present a risk of incrimination.  In this case, the risk of incrimination could be minimized or eliminated in two different ways.  First, Mr. Von Behren could be required to reveal his complete sexual history, except for incidents he reasonably believes involve criminal activity by Mr. Von Behren, other than the criminal offense and conduct in this case.  With the advice of counsel, it should be possible for Mr. Von Behren to draw this distinction.  Second, Mr. Von Behren could be granted immunity for any crimes he may reveal.  Immunity removes the risk of incrimination.  "(A) witness protected by the privilege may rightfully refuse to answer unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant."  *Lefkowitz v. Turley*, 414 U.S. 70, 78 (1973).  Of course, neither RSA nor

the probation department may grant immunity.  The first option is the most practical.

(ii) Compulsion - In essence, the compulsion inquiry asks whether the government seeks to "impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself." **Lefkowitz v. Cunningham** 431 U.S. 801, 805 (1977).  Only some penalties rise to the level of compulsion.  "Courts must decide whether the consequences of (a person's) choice to remain silent are closer to the physical torture against which the Constitution clearly protects or the de minimis harms against which it does not."  **McKune v. Lile**, 536 U.S. 24, 41 (2002).  In **McKune**, the plaintiff prisoner was required to disclose all prior sexual activities, whether criminal or not, as part of a prison sex offender treatment program.  Asserting his right against self-incrimination, McKune refused to comply, and, as a result, he faced a transfer to another prison with fewer privileges.  The Court found this penalty did not constitute compulsion for purposes of the Fifth Amendment. **McKune v. Lile**, 536 U.S. 24, 36 (2002).  In essence, the Court concluded that such consequences are not sufficiently harsh to constitute compulsion.  **Id**. at 36 - 39.  The Court noted that the penalties faced by McKune did not include an extension of his term of incarceration and did not affect his eligibility for good-time credits or parole.  **Id**. at 39. Further, because McKune was a prison inmate, the Court concluded that the consequences he suffered did not rise to the level of compulsion.  "A broad range of choices [and consequences] that might infringe constitutional rights in a free society fall within the expected conditions of confinement of those who have suffered a lawful conviction."  **Id**.  In her concurrence [2] in **McKune**, Justice O'Connor noted the types of

_____

[2]  In **McKune**, four justices (Kennedy, Rhenquist, Scalia, and Thomas) joined the plurality opinion. Justice O'Connor wrote a concurring opinion concurring in the judgment but relying on a more narrow rationale than that of the plurality.  Because the narrow rationale of Justice O'Connor was the basis for her

penalties which previously had been found by the Court to constitute compulsion under the Fifth Amendment.  These penalties include loss of a professional license, ineligibility to receive government contracts, the loss of the right to participate in political associations, and loss of the right to hold public office.  *McKune*, 536 U.S. at 49 - 50.  Of course, the circumstances of an in custody police interrogation also have been held to constitute compulsion.  *Miranda v. Arizona*, 384 U.S. 436, 457 - 458 (1966).

Mr. Von Behren faces potential re-incarceration as a consequence of his refusal to confess past criminal offenses as part of his sex offender treatment.  Refusal to provide incriminating answers likely would prohibit Mr. Von Behren from advancing through the RSA program.  Failure to advance in and successfully complete the program would be a violation of the condition of supervised release which requires Mr. Von Behren to participate in and successfully complete a sex offender treatment program.  Since one likely penalty for that violation is revocation of supervised release and concomitant incarceration, then the penalty is sufficiently severe to constitute compulsion.  "(T)he touchstone of the Fifth Amendment is compulsion, and direct economic sanctions and imprisonment are not the only penalties capable of forcing the self-incrimination which the Amendment forbids."  *Lefkowitz v. Cunningham*, 431 U.S. 801, 806 (1977).

### b.  Unnecessary Deprivation of Liberty

Mr. Von Behren contends the polygraph requirements also constitute a greater deprivation of liberty than is necessary, in violation of § 3583(d).  This is true, he

---

5th vote to uphold the judgment, her concurrence is viewed as the holding of the Court in *McKune*.  *Marks v. United States*, 430 U.S. 188, 193 (1977) (holding of a fragmented Court "may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . ." (internal quotation omitted)); *Searcy v. Simmons*, 299 F.3d 1220 (10th Cir. 2002) (interpreting *McKune* under the rationale stated in *Marks*).

asserts, because of the Fifth Amendment problems discussed above.  Even without those problems, he contends the polygraph requirement constitutes an undue deprivation of liberty because of the inherent unreliability of polygraph testing.

Relevantly, the Tenth Circuit has upheld the imposition of a polygraph requirement as a condition of supervised release. ***United States v. Begay***, 631 F.3d 1168, 1174 (10th Cir. 2011).  Begay was a convicted sex offender.  He did not challenge the polygraph requirement on Fifth Amendment grounds, but argued that a polygraph is unreliable, subject to manipulation, and involves a greater than necessary deprivation of his liberty. ***Id***. at 1173.  When imposing this condition, the district court said:

> Defendant pled guilty to the serious crime of aggravated sexual abuse. While on pre-trial release, Defendant assaulted members of his family, including the daughter he pled guilty to abusing, with a gun. The nature and circumstances of the offense therefore counsel in favor of more extensive conditions of supervised release.... The polygraph testing element of these conditions is part of prescribed sex offender treatment and is, as counsel for the Government pointed out at the hearing, just one of many tools that treatment providers can use to assess and treat Defendant as part of his rehabilitation. As such, polygraph testing would serve the purpose of providing effective correctional and rehabilitative treatment. While the Court notes the significant reliability problems with polygraph testing, polygraph testing in this context would serve the purposes of sentencing.

***Id***. at 1174 (footnote omitted)[3].

The Tenth Circuit noted the significant questions about the reliability of polygraph testing.  Notwithstanding, the court concluded that "(p)olygraph testing could still encourage Begay to be truthful with his probation officer, and it could alert the USPO to

---

[3]  In footnote 6, which is omitted from this quotation, the ***Begay*** court noted that Begay was not on pre-trial release when the assaults mentioned occurred.  Rather, "Begay assaulted his family after the abuse was reported, but before he was charged." ***United States v. Begay***, 631 F.3d 1168, 1174 n.6 (10th Cir. 2011).

potential problems which would prompt further supervisory inquiry." *Id*. at 1175.

C.  Conclusion

The objection of Mr. Von Behren to the polygraph testing requirement must be

sustained to the extent this requirement includes a mandate that Mr. Von Behren admit

to any criminal offense, other than the criminal offense and conduct in this case, that

may be part of his sexual history.  Otherwise, this objection is overruled.

**2.  Requirement to Plead Guilty**

General Program Condition #14 provides:

> I understand that taking responsibility for my sexually offensive behavior is a primary issue to be addressed in my treatment. This will include taking responsibility, not only in my treatment sessions, but with the criminal justice system as well. **Although plea-bargaining related to the legal disposition of my case is acceptable, my continued eligibility to receive treatment services at RSA will ultimately require my entering a plea of guilty to an offense if charged**. If I have already pled guilty to or been convicted or an offense, my acknowledgment of involvement in sexually inappropriate behavior will be required on an ongoing basis to maintain my treatment eligibility.

RSA Documents [#70-1], CM/ECF p. 30, ¶ 14 (emphasis added).  Mr. Von Behren

contends a requirement that he agree to plead guilty "to an offense if charged" violates

his rights under the Fifth and Sixth Amendments.  Specifically, he cites his right against

self-incrimination and his right to trial.

Responding to this argument, the government reads this requirement more

narrowly than does Mr. Von Behren.  The government contends that if the client has

pled guilty to the offense conduct on which the underlying conviction is based, as Mr.

Von Behren did in 2005, then this condition simply requires continued acknowledgment

by Mr. Von Behren of his involvement in the offense conduct.  Although it does not say

so explicitly, the position of the government is that this requirement does no apply to

new charges which may be brought against Mr. Von Behren.

If the RSA contract can be interpreted to avoid a constitutional issue, it should be so interpreted.  ***See U.S. v. York***, 357 F.3d 14, 24 - 25 (1st Cir. 2004) (polygraph condition of probation interpreted to avoid constitutional issue).  The phrase highlighted above speaks of "my case."  Thus, the highlighted phrase and the entire paragraph can be read to apply only to the case, charge, and conviction at issue in this case.  This more narrow interpretation urged by the government avoids any conflict with the Fifth and Sixth Amendments.  Mr. Von Behren entered a guilty plea in this case independent of any conditions of supervised release.  Thus, the requirement that he plead guilty is not at issue.  With a guilty plea and conviction in place, which removes a risk of incrimination, requiring Mr. Von Behren to acknowledge his offense conduct in this case as part of his treatment does not violate Mr. Von Behren's right against self incrimination.  Similarly, Mr. Von Behren waived his right to trial when he entered his guilty plea.  Thus, adopting the interpretation of the government, I conclude that this condition does not compel Mr. Von Behren to involuntarily waive his right to trial.  So interpreted, this provision does not violate the rights of Mr. Von Behren.

### 3.  Arousal Assessments

General Program Condition #7 provides: "I agree to periodic arousal assessments at a minimum of once per year, or at a frequency determined by my therapist, as required to assess my sexual arousal, and to measure my progress with any inappropriate sexual arousal reduction and control."  RSA Documents [#70-1], CM/ECF p. 29, ¶ 7.  At sentencing, I included in the sex offender treatment condition a provision that such treatment "may include polygraph, plethysmograph and Abel examinations."  In its response [#70], the government says SOMB standards require the

16

use of plethysmograph examinations as part of sex offender treatment and claims that plethysmograph examinations are a "crucial resource used by sex offender treatment agencies" to provide effective treatment.   *Response* [#70], p. 6.

Mr. Von Behren objects to use of plethysmograph testing, arguing that the scientific validity and reliability of such testing has been questioned widely.   In addition, he contends that such testing is both highly and illicitly intrusive and embarrassing.  In these circumstances, Mr. Von Behren contends the requirement that he undergo arousal assessments is a greater deprivation of liberty than is necessary to achieve the goal of rehabilitation.  Mr. Von Behren asks that his conditions of supervised release be modified to eliminate the requirement that he undergo plethysmograph testing and that he not be required to agree to this portion of the RSA contract.

The plethysmograph is inherently controversial and its reliability has been questioned by many.  However, it is widely used in sex offender treatment, and its use as a condition of supervised release often has been upheld.  Some courts, however, require a very specific record to be made before this condition of supervised release may be imposed. ***United States v. Weber***, 451 F.3d 552 (9th Cir. 2006).

In ***Weber***, the court considered a plethysmograph requirement imposed as a condition of supervised release on a defendant who had been convicted of possession of child pornography.  The court described the test as follows:

> [A] penile plethysmograph is a test designed to measure a man's sexual response to various visual and auditory stimuli. More precisely, the male "places on his penis a device that measures its circumference and thus the level of the subject's arousal as he is shown sexually explicit slides or listens to sexually explicit audio 'scenes.'" ***Berthiaume v. Caron***, 142 F.3d 12, 13 (1st Cir.1998); ***see also Doe ex rel. Rudy-Glanzer v. Glanzer***, 232 F.3d 1258, 1262 (9th Cir.2000) ("penile plethysmograph is a test that measures, through electric wires attached to a man's penis, the reactions that a man has when presented with certain visual stimuli....").

**Weber**, 451 F.3d at 561-62.

The **Weber** court noted the general rule in the Ninth Circuit that a sentencing court is not required to articulate on the record the reasons for each condition of supervised release. *Id*. at 559.  However, with regard to plethysmograph testing, the court held that such testing may be imposed as a condition of supervised release only if the sentencing court makes an individualized determination that (1) such testing will promote the goals of supervised release in relation to the particular defendant in question; and (2) such testing would involve no greater deprivation of liberty than is reasonably necessary for the purposes of supervised release in the case of the particular defendant in question.  *Id*. at 566 - 567. The court held that such specific findings are necessary, because plethysmograph testing is "exceptionally intrusive in nature and duration."  *Id*. at 563.  The testing encompasses both a physical and mental intrusion, typically lasts for two to three hours per session, and the accuracy and reliability of the testing is subject to serious questions.  *Id*. at 562 - 568.

In **U.S. v. McLaurin**, 731 F.3d 258 (2nd Cir. 2013), the Second Circuit went even further, essentially adopting the blanket rule proposed by the concurring judge in **Weber**.  Noting that the government had not submitted a justification for plethysmograph testing showing that such testing was narrowly tailored to serve a compelling governmental interest, the **McLaurin** court said is agreed with Judge Noonan, the concurring judge in **Weber**.  *Id*. at 261 - 262.  "There is a line at which the government must stop.  Penile plethysmography testing crosses it."  *Id*. at 262 (quoting **Weber**, 451 F.3d at 571 (Noonan, J., concurring)).  In **Weber**, Judge Noonan said also, "a prisoner should not be compelled to stimulate himself sexually in order for the government to get a sense of his current proclivities."  **Weber**, 451 F.3d at 571

(Noonan, J., concurring).

The **McLaurin** court noted doubts about the reliability of plethysmography, but noted additionally that "even if the machine could accurately monitor and record the extent or intensity of a convict's prurient interests . . ., the goal of correctional treatment during supervised release is properly directed at conduct, not at daydreaming." **McLaurin**, 731 F.3d at 263. Ultimately, the court found that the government made no showing that plethysmography is reliable or therapeutically beneficial.  Thus, there was no showing that such testing would serve the goal of rehabilitation.  The court found further that plethysmograph testing did not serve the need to protect the public because restriction of actions protects the public while restriction of thoughts does not.  **Id**. at 64 (we see no reasonable connection between fluctuating penis size and public protection – certainly none strong enough to survive the careful scrutiny that we give to unusual or severe conditions of supervised release).  Finally, the court concluded that such testing does not deter crime.  **Id**. at 263 - 264.  The conclusions of the **McLaurin** court appear to be based primarily on a lack of evidence in the record about plethysmograph testing and some outside reading about such testing.

In **United States v. Dotson**, 324 F.3d 256 (4th Cir. 2003), the Fourth Circuit took a dramatically different approach.  "Because we have already noted that the plethysmograph test is "useful for treatment of sex offenders,"[4] **United States v.**

---

[4]  Notably, the "useful for treatment of sex offenders" comment made in **Powers** was, at most, a passing comment made in the course of a Rule 702 analysis of plethysmograph testing as a basis for expert testimony.  The defendant in **Powers** sought to present such testimony in defense of his criminal case.  In **Powers**, the court did not make a ringing endorsement of the plethysmograph:

The Government proffered evidence that the scientific literature addressing penile plethysmography does not regard the test as a valid diagnostic tool because, although useful for treatment of sex offenders, it has no  accepted standards in the scientific community.  Second, the Government also introduced evidence before the judge that a vast majority of incest offenders who do not admit their guilt, such as Powers, show a

***Powers***, 59 F.3d 1460, 1471 (4th Cir.1995), the district court clearly acted within its

discretion in imposing this condition on Dotson's release."   ***Dotson***, 324 F.3d at 261.

> The test also meets the 'reasonably related" requirement in that it is aimed
> at providing Dotson with treatment, fostering deterrence, and protecting
> the public. ***See Berthiaume v. Caron***,142 F.3d 12, 17 (1st Cir.1998)
> (describing this usage of the plethysmograph as "an accepted tool" and "a
> standard practice" in the field of sex offender treatment); ***see also
> Walrath v. United States,*** 830 F.Supp. 444 (N.D.Ill.1993), aff'd, 35 F.3d
> 277 (7th Cir.1994) (holding that the use of the plethysmograph for
> treatment as a condition of parole is valid).

***United States v. Dotson***, 324 F.3d 256, 261 (4th Cir. 2003).

The ***Dotson*** court relies on the putative fact that plethysmograph testing is aimed

at providing treatment, fostering deterrence, and protecting the public without

considering any evidence which shows that plethysmograph testing actually serves

those purposes.   In addition, the ***Dotson*** court relies on its conclusion that the

plethysmograph is an accepted tool and a standard practice in sex offender treatment

and supervision.   These generalized conclusions represent the polar opposite of the

particularized findings required in ***Weber*** and ***McLaurin***.

Most relevant to our present purposes, the Tenth Circuit has endorsed the highly

restrictive approach of the ***Weber*** court.

> (W)e hold that any condition that affects a significant liberty interest, such
> as one requiring the defendant to participate in residential treatment, ***see,
> e.g., Addington v. Texas,*** 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d
> 323 (1979) ("This Court repeatedly has recognized that civil commitment
> for any purpose constitutes a significant deprivation of liberty...."), or
> undergo penile plethysmographic testing, ***see, e.g., United States v.***

---

> normal reaction to the test. The Government argues that such false negatives render the
> test unreliable. Powers failed to introduce any indicia, let alone a sufficient level, of
> reliability to rebut the Government's evidence. Accordingly, in light of extensive,
> unanswered evidence weighing against the scientific validity of the penile plethysmograph
> test, we cannot say that the district court abused its discretion [in excluding this evidence].

***United States v. Powers***, 59 F.3d 1460, 1471 (4th Cir. 1995).

> ***Weber***, 451 F.3d 552, 563 (9th Cir.2006), must be imposed by the district
> court and supported by particularized findings that it does not constitute a
> greater deprivation of liberty than reasonably necessary to accomplish the
> goals of sentencing, ***see, e.g., id***. at 561.

***United States v. Mike***, 632 F.3d 686, 696 (10th Cir. 2011). ***Mike*** concerned the

imposition of sex offender treatment conditions of supervised release and the propriety

of the delegation by the court of the authority to impose certain conditions. ***See also***

***United States v. Dougan***, 684 F.3d 1030, 1036 (10th Cir. 2012) (condition that

defendant submit to possible penile plethysmograph testing implicates significant liberty

interest and must be based on and reasonably related to the § 3553(a) factors).

Concerning Mr. Von Behren and plethysmograph, the record does not contain

sufficient evidence to support the specific factual findings and conclusions required

under ***Weber***.  Under ***Weber***, the court may not impose this condition of supervised

release without making an individualized determination that (1) such testing will promote

the goals of supervised release in relation to Mr. Von Behren in particular; and (2) such

testing would involve no greater deprivation of liberty than is reasonably necessary for

the purposes of supervised release in the case of Mr. Von Behren.  ***Weber***, 451 F.3d at

566 - 567.  Absent such findings and conclusions – tied specifically to Mr. Von Behren –

and evidence to support them, the objection of Mr. Von Behren to plethysmograph

testing must be sustained.

### 4.  Dating Restrictions / Significant Others Group

In the portion of the RSA contract titled "Relationships and Dating," condition #4

provides that "relationships and dating may be completely or partially restricted until

RSA staff determines that a particular situation/relationship is safe." RSA Documents

[#70-1], CM/ECF p. 38, ¶ 4.  General Program Condition 16 provides:

> I understand that if I am involved in an intimate, sexual relationship, my partner will be required to attend some of my individual sessions.  If my partner wishes to achieve the status of an Approved Supervisor, my partner and I will be required to complete the Approved Supervision Group and follow-up monthly meetings in the RSA Support Group.

RSA Documents [#70-1], CM/ECF p. 31, ¶ 16.[5]

Mr. Von Behren contends these conditions violate his First Amendment right to association.  Further, he argues that these conditions do not satisfy § 3583(d).  He says he has no history of sexual abuse or sexually abusive relationships.  Thus, he argues that a ban on dating an adult is not related to his history and characteristics, involves a greater deprivation of liberty than is reasonably necessary, and violates his right to association.  In response, the government argues that these conditions are not a blanket prohibition on dating; rather the restrictions are in place to ensure the safety of the community and the success of the offender in treatment.

Mr. Von Behren does not contend that the general condition requiring him to participate in and successfully complete sex offender treatment is not merited.  In view of his conviction for possession of child pornography, this requirement, in a general sense, is consistent with the requirements of § 3583(d).  While in treatment, it is reasonable and relevant for treatment providers to closely review dating relationships, which potentially may involve sex.  Sex offender treatment need not be limited to the particular type of sex offense for which a defendant was convicted. Thus, this provision is not, on its face, a greater deprivation of liberty than is necessary nor is it necessarily an undue infringement of the right of association, a right which routinely and necessarily is severely limited by a sentence in a criminal case.

---

[5]  In his objections[#67], Mr. Von Behren cites somewhat different terms from a previous contract he had with RSA.   The terms quoted here are from the RSA contract at issue here.

Potentially, a total ban on dating may constitute a greater restriction on liberty than is necessary or a violation of the First Amendment right to association.  However, in this case, there is no indication that such a ban actually will be imposed on Mr. Von Behren.  Notably, "(c)ourts have consistently upheld imposition of conditions of probation that restrict a defendant's freedom of speech and association when those conditions bear a reasonable relationship to the goals of probation." ***United States v. Turner***, 44 F.3d 900, 903 (10th Cir. 1995).  The RSA Documents provide a procedure by which Mr. Von Behren may be able to obtain approval of dating relationships.  Because the actual scope of the restriction on Mr. Von Behren is not yet known, his objection to this contract term is not yet ripe for review.  ***See United States v. Combe***, 437 F. App'x 644, 646 (10th Cir. 2011) (applying fitness and hardship analysis of ***Kansas Judicial Review v. Stout*** , 519 F.3d 1107 (10th Cir. 2008) and concluding review of supervised release conditions premature because of uncertain or contingent future events).

### 5.  Day-to-day activities

General Program Condition 13 provides:

> I have read and understand the Request for Permission procedure.  I understand that I must follow this procedure to request permission for any activity that would constitute an exception to my contract conditions, as well as any activity that has not been approved in advance by my Community Supervision Team.

RSA Documents [#70-1], CM/ECF p. 30, ¶ 13.  General Program Condition 20 provides:

> I understand that eligibility for engaging in certain activities requires different levels of supervision.  I understand that I must discuss the situation with my primary therapist to determine what level of supervision is necessary for each activity.

RSA Documents [#70-1], CM/ECF p. 31, ¶ 20. The terms of the request for permission

and safety plan procedure are shown in the RSA Documents.  RSA Documents [#70-1], CM/ECF p. 15.  A request for permission must be submitted two weeks in advance of "the exception to the contract you are requesting."  *Id.*

Mr. Von Behren contends these requirements will require him to make a request, two weeks in advance, for permission to go to the bank, go to the grocery store, and any number of other activities required to function in society.  He asserts that his history and characteristics do not justify such restrictions.  He concedes that his history involves exploitation of minors, but argues that this condition must be focused to restrict access only to places "used primarily by children."  *Objections* [#67], p. 22.

The government contends in response that Mr. Von Behren reads these provisions as being far more restrictive than they actually are.  Absent some evidence of precisely what restrictions on such activities are imposed by RSA, it is not possible to determine how restrictive the terms of the RSA program are as to Mr. Von Behren. However, minors frequently are present at or in banks, grocery stores, and other locations cited by Mr. Von Behren.  In the context of his history of sexual exploitation of minors, a requirement that he account for his whereabouts in advance and plan how he will react if certain situations, such as the presence of minors, arise is reasonably related to the § 3553(a) factors and is not a greater deprivation of liberty than is necessary in the context of Mr. Von Behren's case.

Mr. Von Behren contends also that this restriction is so vague that he cannot determine what conduct requires that he seek permission.  The RSA contract provides for the development of an individual Treatment Plan with the specification of goals and methods.  RSA Documents [#70-1], CM/ECF p. 32 - 34.  In addition, the contract provides General Behavior Conditions.  RSA Documents [#70-1], CM/ECF p. 34 - 36.

The General Behavior Conditions are reasonably specific and understandable.  If the individual Treatment Plan is similarly specific, then the restrictions of the RSA program are not unreasonably vague.

### 6.  Ban on Sexually Stimulating Material

General Behavior Condition #2 restricts the  possession or viewing of any "pornographic, sexually oriented, or sexually stimulating materials, or material related to my offending behavior, to include but is [*sic*] not limited to, visual, auditory, mail, telephonic, or electronic media and computer programs, television, or telephone services that are relevant to my deviant behavior."  RSA Documents [#70-1], CM/ECF p. 34 - 35, ¶ 2.  Concerning non-obscene material, Mr. Von Behren contends this restriction violates his rights under the First Amendment.  Mr. Von Behren contends also that the terms "sexually oriented or sexually stimulating materials," even though not obscene,  is overly broad and lacks the narrow tailoring necessary to allow it to survive First Amendment and due process challenges.  In addition, given the breath of this restriction, Mr. Von Behren contends it constitutes a greater deprivation of liberty than is reasonably necessary.

If the RSA contract can be reasonably interpreted to avoid a constitutional or statutory issue, it should be so interpreted.  ***See U.S. v. York***, 357 F.3d 14, 24 - 25 (1st Cir. 2004) (polygraph requirement of probation interpreted to avoid constitutional issue).  Reading this provision to include portions of the Bible, as proposed by Mr. Von Behren, is not a reasonably narrow reading of this provision.  Rather, the court reads this provision to cover sexually stimulating materials including legal, adult pornography and visual, auditory, telephonic, or electronic media and computer programs or services with primarily sexual themes.

In the context of a conviction for possession of child pornography, this condition is reasonably related to the factors set forth in § 3553(a), involves no greater deprivation of liberty than is reasonably necessary to serve the purposes of deterrence, protection of the public, and the provision of correctional treatment in an effective manner. *See* "Sexual Explicit Material as Contraband for Convicted Sex Offenders" [#70-2]; *See, e.g., U.S. v. Mike*, 632 F.3d 686, 700 - 701 (10th Cir. 2011) (applying plain error review). In *Mike*, the court noted with approval holdings from other circuits reaching the same conclusion with regard to a ban on adult pornography imposed on those convicted of offenses involving child pornography. *Id*. at 701 n. 9.

This restriction does not constitute a violation of the First Amendment. "Courts have consistently upheld imposition of conditions of probation that restrict a defendant's freedom of speech and association when those conditions bear a reasonable relationship to the goals of probation." *United States v. Turner*, 44 F.3d 900, 903 (10th Cir. 1995).

### 7. Internet Restrictions

General Behavior Condition 3 prohibits use of the internet "unless/until I am approved in advance for such use by my Community Supervision Team. When/if access has been approved, I agree to sign and comply with the terms and conditions of the Computer Use Agreement." RSA Documents [#70-1], CM/ECF p. 35, ¶ 3. The contract further authorizes searches of computers or other devices used by Mr. Von Behren.

Mr. Von Behren contends that the contract imposes a ban on his use of the

internet.[6]   That is not an accurate reading of the applicable, contract term. In addition, he asserts this provision could be read to include using a self check-out at the grocery store or signing an iPad to verify a purchase, both of which may involve use of the internet.

Given the terms of the contract, it is not yet clear how far the possible restriction on internet use will go in the case of Mr. Von Behren.  As Mr. Von Behren notes, the Tenth Circuit has found a sweeping ban on internet use to be an undue deprivation of liberty in the context of supervised release conditions.  *United States v. White*, 244 F.3d 1199 (10th Cir. 2001).  Because the scope of the restriction on Mr. Von Behren is not yet known, his objection to this contract term is not yet ripe for review.

### 8.  Ban on Alcohol & Illegal Drugs

General Behavior Condition 7 provides: "I am not allowed to possess alcohol or illegal drugs." RSA Documents [#70-1], CM/ECF p. 35, ¶ 7.  Mr. Von Behren objects to a provision that prohibits him from frequenting any establishment whose primary purpose is to serve alcohol.[7]   Apparently, such a provision was in his previous RSA contract, but the current contract does not appear to include such a provision. My analysis is cabined to the current provision.  Mr. Von Behren does not challenge the condition which prevents him from possessing or using illegal drugs.

In the view of the government, alcohol is a disinhibitor which is likely to reduce the control and avoidance measures necessary to effective sex offender treatment. Even though Mr. Von Behren has no record of alcohol abuse and his conviction is not

---

[6]  In his objections[#67], Mr. Von Behren cites somewhat different terms from a previous contract he had with RSA.   The terms quoted here are from the current RSA contract.

[7]  Again, in his objections[#67], Mr. Von Behren cites somewhat different terms from a previous contract he had with RSA.   The terms quoted here are from the current RSA contract.

related to alcohol, the ban on alcohol is reasonably related to the need for effective sex offender treatment.  This condition serves the needs for correctional treatment and protection of the public.  Thus, this condition is  reasonably related to the factors set forth in § 3553(a), and this condition involves no greater deprivation of liberty than is reasonably necessary to serve the purposes of deterrence, protection of the public, and the provision of correctional treatment in an effective manner.

### 9.  No Contact With Minors

The RSA Documents include a document titled No Contact With Minors Condition for Clients 21 Years of Age and Older.  RSA Documents [#70-1], CM/ECF pp. 23 - 26.  Generally, the agreement provides that Mr. Von Behren will not have contact with persons under the age of eighteen until the RSA Treatment Team gives permission.  Mr. Von Behren says he has a teenage sister.  Given the no contact provision, he asserts, he will not be able to telephone the family home, send letters and cards to his family, or engage in any normal family activity.  He says his history does not reflect any exploitation of his sister.  Given these circumstances, Mr. Von Behren contends this condition is not related to the nature and circumstances of his offense, constitutes a greater deprivation of liberty than is necessary, and violates his First Amendment right to association.  He asks the court to tailor the condition to provide for visits with his sister supervised by his mother or stepfather.

Notably, the no contact provision provides a procedure by which Mr. Von Behren can obtain permission to have contact with his sister and possibly other minors when his treatment providers find such contact to be consistent with his sex offender treatment.  On the current record, it is not possible to determine whether or not Mr. Von Behren will be able to obtain permission to have contact with his sister.  Because the scope of the

restriction on Mr. Von Behren is not yet known, his objection to this contract term is not yet ripe for review.

Mr. Von Behren argues also that the no contact provision is impermissibly vague when it requires him to "make all reasonable efforts to avoid all possible contact with children . . . ." *Motion* [#67], p. 29. This quotation appears to come from the prior RSA contract. The current contract provides: "I will make every reasonable attempt to avoid being in purposeful contact with minors." RSA Documents [#70-1], CM/ECF p. 23, ¶ 3. Given the other specific terms of the no contact provision and the wide variety of situations in which unplanned – and potentially dangerous – contact with minors may occur, the requirement of taking reasonable efforts to avoid purposeful contact with minors is not impermissibly vague.

### 10.  Search & Monitoring Provision

Proposed modification number 3, quoted on page 3, broadly authorizes searches of Mr. Von Behren's possessions, computers, and other electronic devices, and authorizes monitoring of his computer use. This proposed condition essentially parrots 18 U.S.C. § 3583(d)(3) (*cf*. USSG §5D1.3(d)(7)(C)), which authorizes a court to order such conditions of supervised release in a case in which the defendant is required to register under the Sex Offender Registration and Notification Act. Mr. Von Behren challenges this condition as an undue occupational restriction, as vague, and as a greater restriction on liberty than is necessary.

Mr. Von Behren does not state how this condition might restrict his occupation, other than to assert that application of the condition to work using computers would restrict his occupation. *Objections* [#67], p. 30. This restriction speaks of computers the defendant is authorized to use. The restriction does not limit Mr. Von Behren to jobs

that do not involve a computer.  Mr. Von Behren has not shown how this restriction constitutes an occupational restriction.  To the extent this condition does amount to an occupational restriction, the court must make specific findings before imposing such a restriction.  A court may impose a condition of supervised release which restricts the business, occupation, or profession of a defendant only if the court finds (1) a reasonably direct relationship existed between the defendant's occupation and the conduct relevant to the offense of conviction; and (2) imposition of such a condition is reasonably necessary to protect the public.  *U.S. v. Mike*, 632 F.3d 686, 698 (10th Cir. 2011) (citing USSG §5F1.5(a)(1) - (2)).

Mr. Von Behren contends this condition is vague, but does not specify which restrictions he considers to be vague.  He cites *Mike* in support of his vagueness argument.  The *Mike* court found the restriction at issue there to be unduly vague because "it is not clear to which computers the conditions in question apply."  *Id*. at 694. The restriction proposed for Mr. Von Behren applies to any computer Mr. Von Behren is authorized by the probation officer to use.  Such authorizations are likely to specify authorized computers.  With such specificity, this condition is reasonably specific and is not impermissibly vague.

The search provision of this condition authorizes searches by law enforcement or probation officers when they have "reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by" Mr. Von Behren.  *Petition* [#54], p. 2.  The search provision is reasonably focused on a key goal of supervised release, enforcement of the conditions of supervised release, and does not allow for a greater deprivation of liberty than is reasonably necessary to accomplish that goal and to serve the purposes of deterrence, protection of the public, and the provision of correctional

treatment in an effective manner.

The computer monitoring condition likely needs some refinement. In *United States v. White*, 244 F.3d 1199 (10th Cir. 2001), the Tenth Circuit reviewed a restriction on internet access imposed on a defendant who had been convicted of receiving child pornography.   The restriction provided that the defendant "shall not possess a computer with Internet access throughout his period of supervised release." *Id*. at 1205. The court concluded that this restriction was a greater restriction of liberty than necessary.  The court found that a condition requiring monitoring software on computers used by the defendant is permissible to limit the defendant's use of the internet to obtain sexually explicit material. *Id*. at 1206.  Any condition limiting use of a computer or the internet must be based on an articulated purpose. *Id*.  In this case, the purpose of the computer monitoring condition is not articulated specifically in the record.  However, if the purpose is stated as restricting and preventing Mr. Von Behren from accessing sexually explicit material, communicating with minors, or violating the conditions of supervised release, then this restriction will satisfy the requirements of *White*.

## 11.  Improper Delegation

In the view of Mr. Von Behren, certain conditions of his supervised release involve an improper delegation of the authority of the court to the probation department and/or to RSA.  In *U.S. v. Mike*, 632 F.3d 686 (10th Cir. 2011), the court held that conditions of supervised release "that touch on significant liberty interests are qualitatively different from those that do not." *Id*. at 695. As to such conditions, the court held,

> granting the probation officer the discretion to decide whether such conditions will be imposed is tantamount to allowing him to decide the nature or extent of the defendant's punishment. Accordingly, we hold that

> any condition that affects a significant liberty interest, such as one
> requiring the defendant to participate in residential treatment or undergo
> penile plethysmographic testing must be imposed by the district court and
> supported by particularized findings that it does not constitute a greater
> deprivation of liberty than reasonably necessary to accomplish the goals
> of sentencing.

*Id*. at 696.

Mr. Von Behren argues that this restriction applies to the conditions requiring plethysmograph testing, the dating restriction, the restriction on day-to-day activities, the internet restriction, the alcohol restriction, and the no contact with minors restriction. Under ***Mike*** and related authority, particularized findings are necessary to support plethysmograph testing as a condition of supervised release. Although the nature of the dating restriction, the restriction on day-to-day activities, and the no contact with minors restriction are not known, these restrictions potentially impact the First Amendment right to association, a significant liberty interest. "(G)ranting the probation officer [or RSA] the discretion to decide whether such conditions will be imposed is tantamount to allowing [the probation officer or RSA] to decide the nature or extent of the defendant's punishment." *Id*. No particularized findings concerning these conditions have been made on the record. To the extent RSA or the probation department may seek to impose significant limits on the right to association of Mr. Von Behren via the dating restriction, the restriction on day-to-day activities, and the no contact with minors restriction, the probation department must seek the approval of the court before imposing such restrictions.

Because the internet restriction does not ban access to the internet and requires only monitoring of internet use, this restriction does not affect a significant liberty interest. Therefore, particularized findings are not necessary. There is no authority for

the proposition that the ban on possession of alcohol affects a significant liberty interest. Thus, particularized findings are not necessary to support this condition.

### D.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That the **Petition for Issuance of Summons on Supervised Release** (Petition) [#54] filed March 14, 2014, and the **Defendant's Combined Objection To Incorporation of RSA, Inc. Contract into Terms of Supervised Release and Motion To Modify Conditions of Supervised Release** [#67] filed April 11, 2014, are resolved as follows;

2.  That the objections of the defendant to the following conditions are **SUSTAINED**:

- the condition which requires Mr. Von Behren to complete a non-deceptive, sexual history polygraph to the extent this condition includes a mandate that Mr. Von Behren admit to any criminal offense, other than the criminal offense and conduct in this case, that may be part of his sexual history;

- the condition which requires Mr. Von Behren to undergo periodic arousal assessments to the extent that condition requires Mr. Von Behren to undergo plethysmograph testing; and

- the proposed condition permitting search and monitoring of computers which Mr. Von Behren is authorized to use, as specified in section C.10. of this order, *supra.*, and as proposed in paragraph (3) of the "Attachment" to the **Petition for Issuance of Summons on Supervised Release** [#54] field March 14, 2014, pending a showing by the government of the purpose of this provision tethered specifically to Mr. Von Behren;

3.  That the objections of the defendant to the following conditions are

**OVERRULED**:

- General Program Condition #14, which requires Mr. Von Behren to enter a pleas of guilty to an offense if charged, based on a reading of this requirement to apply only to the case, charge, and conviction at issue in this case, and not to other charges which may be filed against Mr. Von Behren;

- the restrictions on day-to-day activities, as specified in section C.5. of this order, *supra*.;

- the restrictions on sexually stimulating material, as specified in section C.6. of this order, *supra*.;

- the restrictions on use of the internet, as specified in section C.7. of this order, *supra*.; and

- the proposed condition authorizing searches by law enforcement or probation officers when they have reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by Mr. Von Behren, as specified in section C.10. of this order, *supra*.;

4. That the objections of the defendant to the following conditions are **NOT YET RIPE** for ruling by the court, and, thus, are **OVERRULED** without prejudice:

- the dating restriction, as specified in section C.4. of this order, *supra*.;

- the no contact with minors restriction, as specified in section C.9. of this order, *supra*.; and

- the internet restrictions, as specified in section C.7. of this order, *supra*.;

5.  That proposed condition number two, as proposed in paragraph (2) of the

"Attachment" to the **Petition for Issuance of Summons on Supervised Release** [#54] field March 14, 2014, is **APPROVED** as modified otherwise by this Order;

6.  That proposed condition number three, as proposed in paragraph (3) of the "Attachment" to the **Petition for Issuance of Summons on Supervised Release** [#54] field March 14, 2014, is **APPROVED** in part, to the extent this condition authorizes searches by law enforcement or probation officers when they have reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by Mr. Von Behren;

7.  That approval of proposed condition number three, as proposed in paragraph (3) of the "Attachment" to the **Petition for Issuance of Summons on Supervised Release** [#54] field March 14, 2014, is **DENIED** in part, without prejudice, to the extent this condition permits search and monitoring of computers which Mr. Von Behren is authorized to use;

8.  That the government **MAY SEEK APPROVAL** of that portion of proposed condition number three, specified in paragraph seven 7 above, based on a showing by the government of the purpose of this provision tethered specifically to Mr. Von Behren; and

9.  That the proposed conditions of supervised release are **MODIFIED** further as follows:

- the condition which requires Mr. Von Behren to complete a non-deceptive, sexual history polygraph **SHALL NOT INCLUDE** a mandate or requirement that Mr. Von Behren admit to any criminal offense, other than the criminal offense and conduct in this case, that may be part of his sexual history; and

- the condition which requires Mr. Von Behren to undergo periodic, arousal assessments **SHALL NOT INCLUDE** a requirement that Mr. Von Behren undergo plethysmograph testing.

Dated August 26, 2014, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge