IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Criminal Case No. 04-cr-00341-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

BRIAN VON BEHREN,

      Defendant.

---

## ORDER CONCERNING SEXUAL HISTORY POLYGRAPH REQUIREMENT

---

**Blackburn, J.**

      This matter is before the court on the **Defendant's Emergency Motion for Order That He Not Be Required To Submit To Sexual History Polygraph on January 12, 2015** [#86][1] filed December 23, 2014.  The government filed a response [#90].  I heard the motion on January 5, 2015, and took the matter under advisement.  I now deny the motion.

## I.  FACTS

      On August 26, 2014, I entered an order [#79] addressing the objections of the defendant to certain terms of his supervised release.  In that order, I detailed the factual background which led to the placement of the defendant, Brian Von Behren, on supervised release as well as the details of the conditions of supervised release challenged by Mr. Von Behren.  The condition at issue in the present motion requires

---

[1]  "[#86]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

Mr. Von Behren to "participate in and successfully complete an approved program of sex offender evaluation and treatment, which may include polygraph . . . examinations . . . ." *Petition for Issuance of Summons on Supervised Release* [#54], p. 1.

In the State of Colorado, sex offender treatment is regulated by the Sex Offender Management Board (SOMB) of the Division of Criminal Justice, under the aegis of the Colorado Department of Public Safety. The SOMB was established in 1992 through legislation enacted by the Colorado General Assembly. Federal offenders who are court-ordered to participate in sex offender treatment and who are being supervised in the District of Colorado are referred by the probation office to agencies approved by the SOMB. Mr. Von Behren is enrolled for sex offender treatment with RSA, Inc. (RSA). RSA is such a SOMB approved sex offender treatment agency. SOMB standards require treatment agencies to administer polygraph examinations as part of the sex offender evaluation and any concomitant treatment program. From a practical standpoint, offenders cannot be accepted into or continue to participate in a sex offender treatment program if they will not participate in the SOMB mandated aspects of evaluation and/or treatment.

As part of his required treatment with RSA, Mr. Von Behren was scheduled to undergo a sexual history polygraph examination on Monday, January 12, 2015.[2] Completion of the polygraph test is a requirement of the RSA program. The polygraph examination includes questions asked of Mr. Von Behren in pre-test procedures and related follow-up questions during the polygraph examination proper. The pre-test questions permit the polygraph examiner to tailor follow-up questions to a particular

---

[2] The polygraph examination was stayed by my order [#92] entered January 9, 2015.

individual to be used during the polygraph examination.  In the course of pre-test procedures and/or during the polygraph examination, Mr. Von Behren will be asked the following four questions:

1. After the age of 18, did you engage in sexual activity with anyone under the age of 15?

2. Have you had sexual contact with a family member or relative?

3. Have you ever physically forced or threatened anyone to engage in sexual contact with you?

4. Have you ever had sexual contact with someone who was physically asleep or unconscious?

An answer of "yes" to any of these questions may trigger the examiner to ask certain follow-up questions tailored to the initial question.  For example, if Mr. Von Behren answers "yes" to question number one, the examiner then will likely ask: "How many? What ages? Male or female? and Family or non-family members?"  *Response* [#90], p. 4.

Mr. Von Behren will not be required to answer all of the questions propounded by the examiner, but he will be required to answer some questions.  According to information obtained by counsel for Mr. Von Behren, he can refuse to answer one of the four questions listed above.  However, if he refuses to answer more than one of the four questions, the polygraph preparation and testing will be terminated.  In addition, when applicable, Mr. Von Behren will be required to answer some of the follow-up questions.  Each of the four questions, when answered "yes," will likely trigger follow-up questions.  Using the example of question number one, if Mr. Von Behren answers

"yes," then he likely will be required to answer the first follow-up question, which asks "how many?"  *Response* [#90], p. 4.  In this scenario, he will be asked, but will not be required to answer, the additional follow-up questions tied to question number one.  In sum, Mr. Von Behren will be required to answer no less than three of the four numbered questions listed above, and he will be required to answer any follow-up question asking him "how many?"  I will refer to this group of questions as the "mandatory questions."

At the time the polygraph examination is given, the polygraph examiner is not acting as a criminal investigator.  Rather, the examiner is conducting the examination for the limited and specific purpose of gathering relevant information to serve the goal of sex offender treatment for Mr. Von Behren.  The examiner who is scheduled to conduct the examination of Mr. Von Behren, reported to counsel for the government that he has conducted about 47,000 polygraphs since 1978.  The examiner reported to counsel that law enforcement has never contacted him to obtain information from a polygraph examination, including those examinations that involved the disclosure of heinous facts.

Mr. Von Behren has a contract with RSA for sex offender treatment.  *RSA Contract* [#70-1 Restriction Level 2].  General Program Condition # 8 requires Mr. Von Behren to complete a "non-deceptive sexual history polygraph process" prior to advance through the RSA program.  *RSA Contract* [#70-1], CM/ECF p. 29, ¶ 8.  If Mr. Von Behren fails to make adequate disclosures, he may be required to "participate in a higher frequency of sexual history disclosure polygraphs, increased monitoring and containment, and/or staffing with the case management team."  *Id*., CM/ECF p. 30, ¶

4

10.   General Program Condition #12 states: "I understand that a pattern of deceptive polygraph examination results (suggesting a lack of honesty with my therapists), whether they are sexual history disclosure polygraphs or monitoring/maintenance polygraphs, may be a factor considered in any decision made regarding whether I am unsuccessfully discharged from, or progressing in my treatment program." *Id*., CM/ECF p. 30, ¶ 12.

The contract provides further that Mr. Von Behren agrees "to be completely honest during all treatment sessions and assume full responsibility for my offenses and my behavior." *Id*., CM/ECF p. 36, "Honesty" ¶ 1. Finally, the contract provides that "any violation of the conditions of this contract may be grounds for modification, suspension, and/or discharge from the RSA program at the discretion of the staff." *Id*., CM/ECF p. 38, ¶ 1. In a previous response [#70], the government notes that polygraph testing "is a treatment requirement and modification of this requirement will necessitate the Defendant's termination from any SOMB approved provider of sex offender treatment." *Response* [#70], p. 8.

The RSA Documents include the following provision concerning reports of any crime committed by Mr. Von Behren about which RSA becomes aware:

> I hereby instruct RSA, Inc. to report to any appropriate authority or authorities any occurrence or potential occurrence of any sexual offense on my part regardless of how RSA, Inc. gains knowledge of such occurrence or potential occurrence. "Appropriate authority or authorities" as used in this and subsequent revisions may include, but is not limited to, County Human Services Departments, law enforcement agencies, probation or parole personnel, victims or potential victims, parents, spouses, school personnel, and employers.

*Acknowledgment of Non-Confidentiality and Waiver of Confidentiality, Privilege, and Right of Privacy* [#70-1] p. 7, ¶ 4.

5

## II.  STANDARDS OF REVIEW

The imposition of conditions of supervised release is governed by 18 U.S.C. §

3583(d) (*Cf.* USSG §5D1.3, **Conditions of Supervised Release**). That statutory

section provides that the court may order a special condition of supervised release,

provided such condition: (1) is reasonably related to the factors set forth in section

3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D); (2) involves no greater deprivation of

liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B)

(deterrence), (a)(2)(C) (protection of the public), and (a)(2)(D) (correctional treatment);

and (3) is consistent with any pertinent policy statements issued by the Sentencing

Commission pursuant to 28 U.S.C. § 994(a). 18 U.S.C. § 3583(d); USSG 5D1.3(b).

Mr. Von Behren does not contend that the sexual history polygraph examination

requirement violates the standards of § 3583.  Instead, he contends that this

requirement violates his Fifth Amendment right against self-incrimination because he

will be required to incriminate himself when he is required to answer the questions

summarized above.  Of course, even though a condition of supervised release may

pass muster under § 3583(d) and the applicable case law concerning that section, any

condition which violates the constitutional rights of Mr. Von Behren must be altered to

remedy the violation or be removed altogether.

## III.  FIFTH AMENDMENT ANALYSIS

Mr. Von Behren argues that the sexual history polygraph testing requirement

permits RSA to put questions to Mr. Von Behren and to require answers even though

some answers to some questions may incriminate him in a subsequent criminal

prosecution or proceeding.[3]  He contends this constitutes a violation of his Fifth Amendment privilege against self incrimination.  To establish his Fifth Amendment claim, Mr. Von Behren must prove two things: (A) that the statements required by the government carry the risk of incrimination; and (B) that the threatened penalty constitutes compulsion.  *Doe v. Heil*, 781 F. Supp. 2d 1134, 1138 (D. Colo. 2011) aff'd, 533 F. App'x 831 (10th Cir. 2013) (citing *U.S. v. Antelope*, 395 F.3d 1128, 1135 (9th Cir. 2005)).

## A.  Risk of Incrimination

The right against self incrimination is applicable only when the threatened incrimination is real and appreciable rather than remote, unlikely, or speculative. *Minnesota v. Murphy*, 465 U.S. 420, 465 n.7 (1984).  Stated differently, "the danger to be apprehended must be real and appreciable, with reference to the ordinary operation of law in the ordinary course of things; not a danger of an imaginary and unsubstantial character, having reference to some extraordinary and barely possible contingency, so improbable that no reasonable man would suffer it to influence his conduct." *Brown v. Walker*, 161 U.S. 591, 599 (1896) (internal quotation omitted).  While a person claiming the privilege need not incriminate himself to claim the privilege, if the circumstances appear to be innocuous, the person claiming the privilege must make some positive disclosure indicating where the danger lies.  *McCoy v. In C.I.R.*, 696 F.2d 1234, 1236 (9th Cir.1983).

Recently, the United States Court of Appeals for the Tenth Circuit summarized the standards relevant to a determination of whether or not a statement is incriminating.

---

[3] Including supervised release revocation proceedings, if any, in this case.

The Supreme Court has broadly construed the protection afforded by the Fifth Amendment privilege.  As a result, the constitutional guarantee against testimonial compulsion extends not only to answers that would in themselves support a conviction, but also to information that would furnish a link in the chain of evidence that could lead to prosecution.

Not much is required, therefore, to show an individual faces some authentic danger of self-incrimination as the privilege extends to admissions that may only tend to incriminate.  Accordingly, an individual does not lose his right to claim the Fifth Amendment privilege merely because a successful prosecution is unlikely to add to the punishments he already faces for other crimes.  To the contrary, we will uphold an individual's invocation of the privilege against self-incrimination unless it is perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken and his answers could not possibly have a tendency to incriminate.

*United States v. Rivas-Macias*, 537 F.3d 1271, 1278-79 (10th Cir. 2008) (internal quotations and citations omitted) (addressing effect of statements which might affect criminal sentencing).  When a person has an "articulated real and appreciable fear that [the information sought might] be used to incriminate him, or would furnish a link in the chain of evidence needed to prosecute him, the privilege attaches and must be honored."  *See Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 190 (2004) (*citing Hoffman v. United States*, 341 U.S. 479, 486 (1951)).

In this case, the government contends that the risk of incrimination presented by the mandatory questions is remote and speculative.  For example, the government contends that if Mr. Von Behren answers "yes" to question number one and then, in response to the follow-up question "how many," specifies a number, he would  not have provided nearly enough information to support further investigation, let alone a viable prosecution.  The government argues that even if this very general information were in the hands of law enforcement, such general information is not sufficient to support a

criminal charge against Mr. Von Behren and, most likely, would not even trigger an investigation, let alone a prosecution, by law enforcement.

In response, Mr. Von Behren notes that an answer of "yes" to any one of the four questions necessarily constitutes an admission to a criminal act, even if the "yes" answer alone is very general and does not specify the time, the place, the identity of victims, or other people involved.  Mr. Von Behren asserts that, depending on a variety of possible circumstances, his "yes" answer may provide a link in the chain of evidence that could lead to a prosecution.

Mr. Von Behren does not point to any existing circumstances to support this contention that his "yes" answer to any one or more of the questions may provide a link in the chain of evidence that could lead to a prosecution.  However, I am quick to recognize that requiring him to identify such circumstances generally amounts to a requirement that Mr. Von Behren incriminate himself in order to claim the privilege against self-incrimination.  Of course, I may not impose such an inherently insidious requirement.  However, I may and do infer that the refusal of Mr. Von Behren to comply with the requirement that he answer these questions is some indication that his answers to one or more of the madatory questions would, in fact, indicate that he has engaged in some type of criminal conduct.  ***U.S. v. Antelope***, 395 F.3d 1128, 1135 (9th Cir. 2005).

As I noted in my previous order [#79] addressing the Fifth Amendment issue raised by Mr. Von Behren, sexual history disclosure requirements in sex offender treatment programs have been found to require admissions that tend to incriminate. "Based on the nature of [the requirement to reveal full sexual history] and Antelope's

9

steadfast refusal to comply, it seems only fair to infer that his sexual autobiography would, in fact, reveal past sex crimes." *Antelope*, 395, F.3d at 1135.  In *Searcy v. Simmons*, 299 F.3d 1220 (10th Cir. 2002), the Tenth Circuit considered a sex offender treatment program for incarcerated inmates which program included a requirement that the inmate reveal his complete sexual history – crimes and all.  The Tenth Circuit concluded that the complete sexual history requirement presented a real risk of incrimination.  *Id*. at 1225 n. 2.  The Tenth Circuit noted the opinion of the Supreme Court of the United States in *McKune v. Lile*, 536 U.S. 24 (2002).  In *McKune*, which also concerned a prison sex offender treatment program, the Supreme Court concentrated on the nature of the claimed compulsion and, thus, seems to have concluded that the sexual history requirement presented a real risk of incrimination. *McKune v. Lile*, 536 U.S. 24 (2002).

In the case of Mr. Von Behren, the claimed risk of incrimination is tethered tightly to the four particular questions and the likely follow-up question which would be prompted by a "yes" answer to any of those four initial questions.  Examining these specific questions and the other circumstances demonstrated in the record, I conclude that the mandatory questions at issue here and the limited requirement that Mr. Von Behren provide answers to those questions do not present a real and appreciable risk of incrimination to Mr. Von Behren, *a fortiori*, given the extensive experience of the polygraph examiner chosen to conduct the polygraph.  I analyze each question in turn.

**1. After the age of 18, did you engage in sexual activity with anyone under the age of 15?**  Under Colorado law, and likely the law of most states, an affirmative answer to this question by Mr. Von Behren almost certainly would be an indication that

Mr. Von Behren committed a crime in the past.   See, *e.g.*, §18-3-405, C.R.S.  Under

current Colorado law, there is no period of limitations applicable to a criminal charge

involving a sex offense against a child.  §16-5-401, C.R.S.  If Mr. Von Behren answered

this question "yes," then he would be required to answer one follow-up question, "how

many?"  Any number provided by Mr. Von Behren in response almost certainly would

indicate the number of times Mr. Von Behren committed a criminal offense in the nature

of sexual assault on a child.

However, such answers from Mr. Von Behren would not present a real and

appreciable risk of incrimination.  This is true primarily because these answers do not

specify the time, the place, the identity of any victim, or other people involved.

Assuming the worst-case-scenario for Mr. Von Behren, one can imagine a

circumstance in which law enforcement suspects Mr. Von Behren in the sexual assault

of a child, but has concluded there is not enough evidence to prosecute Mr. Von

Behren.  Even in this circumstance, a "yes" answer by Mr. Von Behren to question

number one, coupled with a number specified by Mr. Von Behren in response to the

question "how many?" would not provide a link in the chain of evidence which could

lead to a prosecution.  Rather, the very general and non-specific answers of Mr. Von

Behren, which provide no tie to time, place, or identity of others involved, would not

provide a link in the chain of evidence that would make a prosecution viable when a

prosecution was not viable without the answers.  The risk of prosecution presented by

such answers, even in this worst-case scenario, do not present a danger of prosecution

which is real and appreciable with reference to the ordinary operation of law in the

ordinary course of things.  At worst, this worst-case scenario presents an "extraordinary

and barely possible contingency" of prosecution rather than a real and appreciable risk of incrimination.  ***Brown v. Walker***, 161 U.S. 591, 599 (1896).

**2.  Have you had sexual contact with a family member or relative?**  Of course, some sexual contacts with family members or relatives are unlawful but, in many circumstances, such contacts are perfectly lawful.  Thus, a "yes" answer to question number two does not necessarily indicate that Mr. Von Behren has committed a crime.  If Mr. Von Behren answered "yes" to question number two and provided a number in answer to the follow-up question "how many?," those answers would be inscrutably inexplicit when considered in the context of a criminal prosecutuion.  Neither of these answers would provide sufficient specificity which would tend to indicate whether the sexual contact in question was criminal and, even if it was criminal, whether Mr. Von Behren was a perpetrator, a victim, or both.  Again, such limited answers do not specify the time, the place, the identity of any victim, or other people involved.

As to question number two, the very general and non-specific answers of Mr. Von Behren would not provide even one complete link in the chain of evidence which would revive an otherwise untenable investigation and concomitant prosecution. The limited and generalized answers of Mr. Von Behren to these questions present, at worst, an "extraordinary and barely possible contingency" of incrimination and prosecution and not a real and appreciable risk of incrimination.  ***Brown***, 161 U.S. at 599.

**3. Have you ever physically forced or threatened anyone to engage in sexual contact with you?**  An affirmative answer to this question by Mr. Von Behren likely would be an indication that Mr. Von Behren committed a crime.  If Mr. Von Behren

answered this question "yes," then he would be required to answer one follow-up question, "how many?"  Any quantification provided by Mr. Von Behren in response would likely quantify the number of concomitant criminal offenses.

However, once again, such inherently inexplicit answers from Mr. Von Behren would not present a real and appreciable risk of incrimination. These answers do not provide the minimum details necessary to enable a viable criminal investigation or prosecution: no details as to the time, the place, the identity of victims, or other people involved.  Assuming the worst-case-scenario for Mr. Von Behren, one can imagine a circumstance in which law enforcement suspected Mr. Von Behren in a sexual assault, but concluded it did not have enough evidence to prosecute Mr. Von Behren.  Even in this circumstance, a "yes" answer by Mr. Von Behren to question number three and a concomitant number of such incidents – without much more – would not provide even a complete link in the chain of evidence necessary to sustain prosecution.  Rather, the very general and non-specific answers of Mr. Von Behren would not provide the genesis of a criminal investigation and would not revive an otherwise moribund one. Even this worst-case scenario presents an "extraordinary and barely possible contingency," and not a real and appreciable risk of incrimination.  ***Brown v. Walker***, 161 U.S. 591, 599 (1896).

**4. Have you ever had sexual contact with someone who was physically asleep or unconscious?**  Of course, some sexual contacts with persons who are asleep are unlawful, but, in many circumstances, such contacts are not unlawful. Thus, a "yes" answer to question number four does not necessarily indicate that Mr. Von Behren has committed a crime.  A "yes" answer to question number four indicates that

such sexual contact occurred, but does not specify any other circumstances of that contact and, therefore, leaves inexplicit whether the contact was criminal or not.  If Mr. Von Behren provided a number in answer to the follow-up question "how many?," that answer too would be inscrutably inexplicit.  As with the other questions, the very general and non-specific answers of Mr. Von Behren to question number four would not provide even one complete link in the chain of evidence that would render viable an otherwise untenable prosecution.  The generalized answers of Mr. Von Behren to this question present, at worst, an "extraordinary and barely possible contingency" of incrimination and prosecution and not a real and appreciable risk of incrimination.  ***Brown***, 161 U.S. at 599.

Thus, I conclude ultimately that none of the four questions at issue here, plus the mandatory follow-up question, presents a real and appreciable risk of incrimination in a constitutional sense.  In addition, I note, Mr. Von Behren can refuse to answer one of the four questions and continue with the polygraph examination.  That fact further extenuates the already remote possibility that his affirmative answer to one or more of these questions might somehow prompt or direct a criminal prosecution.

### B.  Compulsion

Absent a risk of incrimination, it is not necessary to consider the issue of compulsion.  Under the Fifth Amendment, a threat of compulsion is of no moment absent a risk of incrimination.

### C.  Conclusion

Considering the four specific questions at issue and the likely follow-up question, "how many?," I find and conclude that Mr. Von Behren has not shown that his answers

to the mandatory questions present a credible or appreciable risk of incrimination in violation of his Fifth Amendment right against self-incrimination.  Any specter of possible incrimination is just not sufficiently real and appreciable; instead, it is remote, unlikely, and speculative.  *Murphy*, 465 U.S. at 465 n.7.  Even "yes" answers to the four initial mandatory questions coupled with an answer to the likely follow-up question will not provide a complete link in a now incomplete chain of evidence that could lead to prosecution. *Rivas-Macias*, 537 F.3d at 1278-79; *Hiibel,* 542 U.S. at 190. Any danger here is of a speculative and unsubstantial character, necessitating reference to some extraordinary and barely possible contingency, so improbable that no reasonable man would suffer it to influence his conduct. *Walker*, 161 U.S. at 599.[4]

Finally, I note that Mr. Von Behren will be permitted to consult with his counsel before Mr. Von Behren is asked questions in pre-test procedures.  At that consultation, the questions to be asked of Mr. Von Behren in the pre-test procedures will be available for review by Mr. Von Behren with his counsel.  After the pre-test procedures, Mr. Von Behren again will be permitted to consult with his counsel.  At this second consultation, the questions to be asked of Mr. Von Behren in the sexual history polygraph, including questions tailored to Mr. Von Behren based on his pre-test answers, will be available for review by Mr. Von Behren with his counsel.  These opportunities to consult with counsel at propitious times during the process provide additional protection for Mr. Von Behren

---

[4] When I issued my previous order [#79] addressing this issue, the record did not illuminate the precise nature of the mandatory questions.  In the absence of such precise information, I sustained the objection of Mr. Von Behren to the sexual history polygraph requirement to the extent that polygraph requirement "includes a mandate that Mr. Von Behren admit to any criminal offense, other than the criminal offense and conduct in this case, that may be part of his sexual history." Order [#79], p. 32.  Now, with a focused analysis of the specific questions at issue, I conclude that the mandatory questions do not present an unconstitutional risk of incrimination.

and provide protection in the event the examiner changes the nature or tenor of any of the questions to be asked.

## IV.  ORDERS

THEREFORE, IT IS ORDERED as follows:

1.  That the **Defendant's Emergency Motion for Order That He Not Be Required To Submit To Sexual History Polygraph on January 12, 2015** [#86] filed December 23, 2014, is **DENIED**;

2.  That as part of his sexual offender treatment, the defendant, Brian Von Behren, **MAY BE REQUIRED** to complete a sexual history polygraph which includes the questions and required answers described in this order.

Dated January 27, 2015, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge